UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LOGISTIC DYNAMICS, LLC, Successor by Merger to LOGISTIC DYNAMICS, INC.,

        Plaintiff,

    v.

ROOD LOGISTICS LLC,

        Defendant.

21-CV-1056-LJV
DECISION & ORDER

---

The plaintiff, Logistic Dynamics, LLC, successor by merger to Logistic Dynamics, Inc., ("LDI"), initially commenced this action against Rood Logistics LLC ("Rood") in New York State Supreme Court, Erie County, on July 8, 2021. Docket Item 1-1. On September 28, 2021, Rood removed the case to this Court based on diversity of citizenship. *Id*.; *see also* 28 U.S.C. §§ 1441 and 1332. Docket Item 1.

On October 5, 2021, Rood moved to dismiss, arguing that this Court did not have personal jurisdiction over Rood under New York C.P.L.R. § 302(a), New York's long-arm statute; Rood also argued that exercising jurisdiction would violate its right to due process under the Fourteenth Amendment. Docket Item 8. LDI opposed the motion to dismiss, arguing that Rood's actions in Georgia caused injury to LDI in New York, satisfying the long-arm statute, and that Rood's connection with New York satisfied any constitutional concerns. Docket Item 11. Rood replied on October 26, 2021. Docket Item 12. For the following reasons, Rood's motion to dismiss for lack of personal jurisdiction is granted.

## BACKGROUND[1]

LDI, a Delaware company with its principal place of business in New York, Docket Item 1-1 at ¶ 1, is a transportation company with "a network of available trucks, drivers, and other logistic support information," Docket Item 11-1 at ¶¶ 3-4.  Rood, a Georgia company, Docket Item 1-1 at ¶ 2, is a transportation broker that links clients with transportation companies, Docket Item 11-1 at ¶ 4.

In early 2015, LDI entered into a business arrangement with Rood.  Docket Item 1-1 at ¶ 4.  Under this arrangement, Rood performed freight brokerage services on behalf of LDI and its customers.  *Id*.  Rood used "LDI Freight," a remote broker software program "housed, monitored, and maintained [by LDI] in New York State," to enter the loads for shipment.  Docket Item 11-1 at ¶¶ 5-6.  In return for these services, Rood would receive a percentage of the anticipated gross profit from each billed shipment.  Docket Item 1-1 at ¶¶ 5-6.  Rood agreed to be liable for uncollected or unpaid loads that were the result of its own failure to obtain a schedule of rates or a rate confirmation in writing for each customer.  *Id.* at ¶ 6.

LDI alleges that around late 2019, it discovered that Rood had for months been "knowingly and intentionally [ ] submitting fraudulent invoices and double entering load data into LDI's system in order to receive commissions that they had not in fact earned."  *Id*. at ¶ 7.  Specifically, LDI alleges that Rood had intentionally double entered at least

---

[1] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trustees of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014)).

thirty-eight shipments.  *Id.* at ¶ 8.  LDI claims that before it knew of Rood's wrongful actions, it mistakenly paid $120,835.09 in commission to Rood on the incorrectly billed loads and lost another $10,903.40 for loads that were delivered to its client, Matheson Trucking Inc. ("Matheson"), who refused to pay for services because they were incorrectly billed.  *Id.* at ¶ 9.

The loads at issue in this case originated outside New York and were delivered to Matheson, a California company, at a location outside New York.  Docket Item 11-1 at ¶¶ 11-12.  Rood concedes that its founder and owner was present in New York in 2017 for social events and one month of professional activity that predated the shipment of the Matheson loads.  Docket Item 8-2 at ¶ 21.  LDI does not dispute the timing of the professional activity, and there is nothing in the record to support the conclusion that a representative of Rood ever travelled to New York to do business in connection with the Matheson loads.  *See generally* Docket Item 11-1.  Indeed, the record is devoid of any assertion that Rood coordinated the Matheson loads, as it did with most of its shipments, from anywhere other than the state of Georgia.  *Id.*

When Rood refused to pay for the Matheson loads that LDI claimed had been fraudulently entered, LDI initiated this action asserting claims of breach of implied contract, account stated, unjust enrichment, and quantum meruit.  Docket Item 1-1.  Rood then filed the motion at issue.

## DISCUSSION

To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making "a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) (citation

omitted). To do that, the plaintiff must make "'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)).

The exercise of personal jurisdiction over a non-resident defendant must be consistent with both the forum state's long-arm statute and the Fourteenth Amendment's due process requirements. *See Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990). "[A] [s]tate may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with the [state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[2] *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Following its decision in *International* Shoe, the Supreme Court has consistently distinguished between general or "all-purpose" jurisdiction, and specific or "case-linked" jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Here, New York's long-arm statute does not give this Court jurisdiction over the defendant. And even if it did, due process would preclude this Court from exercising jurisdiction over Rood.

---

[2] Because the minimum contacts requirement of *International Shoe* has not been met, it is not necessary to discuss whether exercising jurisdiction would be consistent with the "traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316.

4

I.  **PERSONAL JURISDICTION UNDER NY CPLR § 302(a)(3)(i)-(ii)**

LDI relies on the "tortious conduct" section of New York's long-arm statute to support its claim that this Court can exercise personal jurisdiction over Rood. Docket Item 1-1 at ¶ 3. LDI's reliance on CPLR § 302(a)(3)(i)-(ii) fails for at least two reasons.

A plaintiff relying on CPLR 302(a)(3) must show that (1) the defendant committed a tortious act outside New York; (2) the cause of action arises from that act; and (3) the act caused injury to a person or property within New York. *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000). In addition, the plaintiff must show that the defendant either (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. *Id.*

LDI's argument founders on the first element. Section 302(a)(3) is expressly limited to tortious conduct, but LDI's four claims against Rood sound in contract or quasi-contract on their face: "Breach of Implied Contract," Docket Item 1-1 at 3; "Account Stated," *id*. at 5; "Unjust "Enrichment," *id*. at 6; and "Quantum Meruit," *id.* "Under New York law, quantum meruit and unjust enrichment claims are analyzed together as a single quasi-contract claim." *Zim American Integrated Shipping Services Co., LLC v. Sportswear Group, LLC*, 550 F.Supp.3d 57, 67 (S.D.N.Y. 2021) (internal citations omitted); *see also Snyder v. Bronfman*, 13 N.Y.3d 504, 508 (2009) ("Unjust enrichment and quantum meruit are, in this context, essentially identical claims, and both are claims under a contract implied . . . in law to pay reasonable compensation.")

(internal citations omitted).  Likewise, a claim for account stated is not maintainable "[i]n the absence of a claim establishing underlying liability,"—that is, without an express or implied contract establishing a reason for a debt.  *See Unclaimed Prop. Recovery Serv., Inc. v. UBS PaineWebber Inc.,* 58 A.D.3d 526, 527 (1st Dept. 2009), citing *M. Paladino, Inc. v. Lucchese & Son Contr. Corp.,* 247 A.D.2d 515, 516 (2d Dept.1998) ("An account stated assumes the existence of some indebtedness between the parties, or an express agreement to treat the statement as an account stated. It cannot be used to create liability where none otherwise exists.").  And the claim of breach of implied contract is a contract claim by definition.

Indeed, LDI admits that it does not raise tort claims against Rood when it says that "LDI did not allege that Rood Logistics committed a tort in Georgia.  Instead, LDI alleged a series of quasi-contractual causes of actions [sic]."  Docket Item 11-2 at 7.  So because LDI's claims do not sound in tort, section 302(a)(3) does not confer jurisdiction.  *See Zim American*, 550 F.Supp.3d at 67; *Snyder*, 13 N.Y.3d at 508; *Unclaimed Prop. Recovery Serv., Inc.,* 58 A.D.3d at 527.

Moreover, even if LDI had alleged that Rood committed a tortious act outside New York, section 302(a)(3) still would not confer jurisdiction because LDI does not allege an injury in New York.  Contrary to LDI's argument, "economic damages in New York is insufficient, alone, to establish a direct injury in New York for NY CPLR § 302(a)(3) purposes."  *Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 38 (2d Cir. 2010).  Section 302(a)(3) was designed to provide jurisdiction over out of state defendants who cause some physical injury in New York.  *See American Eutectic Welding Alloys Sales Co. v. Dryton Alloys Corp.*, 439 F.2d 428, 432-435 (2d Cir. 1971);

*Chemical Bank v. World Hockey Ass'n*, 403 F.Supp 1374, 1379 (S.D.N.Y. 1975) (section 302(a)(3) was primarily designed to confer jurisdiction for physical injuries, not non-physical commercial injuries); *Berdeaux v. OneCoin, Ltd.*, 561 F.Supp.3d 379, 404-409 (S.D.N.Y. 2021) (same); *Assoc. Trade Dev., Inc., v. Condor Lines, Inc.*, 590 F.Supp. 525, 528-529 (S.D.N.Y. 1984) (same); *Ins. Co. of the State of Pa. v. Centaur Ins. Co.*, 590 F.Supp. 1187, 1189 (S.D.N.Y. 1984) (economic injury alone insufficient to confer personal jurisdiction under CPLR § 302(a)(3)).  So when the underlying events take place outside New York, the fact that there are "financial consequences in New York due to the fortuitous location of [the] plaintiff[ ] in New York is not a sufficient basis for jurisdiction under Section 302(a)(3)." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (internal citation omitted).  In sum, LDI has not alleged facts that would give this Court jurisdiction under section 302(a)(3), the only jurisdictional basis it cites.  For that reason alone, the defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(2) is granted.  But even if LDI somehow established jurisdiction under New York's long-arm statute, that jurisdiction would not pass constitutional muster.

## II.   DUE PROCESS

### A. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations within the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317).  While the model forum for the exercise of general jurisdiction over a corporate

defendant is its place of incorporation or principal place of business, *see id.* at 924; *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016), the exercise of general jurisdiction is not strictly limited to only those two places, *BNSF Ry. Co. v. Tyrell*, 137 S.Ct. 1549, 1558 (2017). "In an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139, n.19).

If a case is not truly "exceptional," however, a corporate defendant may be regarded as "essentially at home" only in its place of incorporation or principal place of business. *Brown*, 814 F.3d at 627. Accordingly, when a corporate defendant neither is incorporated nor has its principal place of business in the forum state, "mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'"[3] *Id.* at 629.

LDI does not allege that this Court has general jurisdiction over Rood. And even if it did, the record would not support such a finding.

---

[3] *Perkins v. Benguet Consolidating Mining Co.*, 342 U.S. 437 (1952) is the only example cited in *Daimler* as an exceptional case conferring general jurisdiction in a forum that was not the defendant's place of incorporation or principal place of business. *See Brown*, 814 F.3d at 629. In *Perkins*, the defendant was a company incorporated in the Philippines that halted its operations during the Japanese occupation of the Philippines during World War II. *Perkins*, 342 U.S. at 447. The company's president subsequently moved to Ohio where he established an office, maintained files, and managed the company's activities. *Id.* at 447-48. The *Perkins* Court held that Ohio could exercise general jurisdiction over the defendant company because "Ohio was the corporation's principal, if temporary, place of business." *Daimler*, 571 U.S. at 129-30 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780, n.11 (1984)). In other words, the Court held that there was general jurisdiction over the defendant company because its Ohio office served as a "surrogate for the place of incorporation or head office." *Id.* at 130, n.8. Nothing even approaching that unique circumstance has been alleged here.

First, Rood is a Georgia company with its principal place of business in Georgia. So there must be something "exceptional" about Rood's operations in New York to render Rood "essentially at home" in New York and therefore amenable to general jurisdiction here. See *BNSF Ry. Co.*, 137 S.Ct. at 1558; *Brown*, 814 F.3d at 627. But there is nothing of the sort.

Rood has no New York office and conducts its work entirely outside New York, Docket Item 8-2 at ¶¶ 5-8. Although Rood does some business in the state, that alone is not sufficient to confer general jurisdiction. See *Goodyear*, 564 U.S. at 927. Even LDI's assertion that Rood coordinated 403 loads for LDI—unrelated to the loads at issue here—that were shipped wholly within New York state, Docket Item 11-1 at 4, is insufficient to render Rood essentially at home in New York, see *BNSF Ry. Co.*, 137 S.Ct. at 1559. Because Rood's place of incorporation and principal place of business are outside New York, and because Rood's New York activities do not make this an exceptional case, Rood is not essentially at home in New York. Therefore, this Court cannot exercise general jurisdiction over Rood.

### B. Specific Jurisdiction

Before a court can exercise specific jurisdiction over a non-resident defendant, the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum [s]tate." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1024 (2021). In doing so, the defendant must have intentionally "reached out beyond' its home" and into the forum state, such as by

9

exploiting the forum state's market or by entering a contractual relationship there.[4]  *Id.* at 1025 (quoting *Walden v. Fiore*, 571 U.S. 227, 285 (2014)).  The defendant's actions and contacts within the forum state must be voluntary and cannot be "random, isolated, or fortuitous."  *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984).

Moreover, even if a non-resident defendant has purposefully engaged in sufficient activity in the forum state, a court may exercise specific jurisdiction over that defendant only if the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum."  *See Ford Motor Co.*, 141 S.Ct. at 1025 (quoting *Bristol-Meyers Squibb Co. v. Super. Ct. of Cal., S.F. City*, 137 S.Ct. 1773, 1780 (2017)).  In other words, there must be a connection between the forum state and the underlying controversy, "principally, [an] activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation."  *Goodyear*, 564 U.S. at 919 (citation and internal quotation marks omitted).  When there is no such connection, there is no specific jurisdiction over the defendant regardless of the extent of the defendant's unrelated activities in the forum state.  *Bristol-Meyers Squibb*, 137 S.Ct. at 1781.

The specific jurisdiction rules were designed to guarantee a defendant's fair treatment and to uphold "interstate federalism."  *Ford Motor Co.*, 141 S.Ct. at 1025 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)).  These rules are aimed at ensuring that defendants "have a fair warning that a particular activity may subject [them] to the jurisdiction of [another state]," *Burger King Corp. v. Rudewicz*,

---

[4] Here, LDI does not allege a contract, rather they allege "an arrangement," whereby Rood coordinated a series of Matheson loads that originated outside New York and that were delivered to a location outside New York.  Docket Item 1-1 at ¶ 4.

471 U.S. 462, 472 (1985), which in turn "gives a degree of predictability to the legal system," *World-Wide Volkswagen*, 444 U.S. at 297.

Even if Rood had sufficient contacts with New York to subject it to specific jurisdiction here—for example, by coordinating shipments to or from New York—the plaintiff's claim does not "arise out of or relate to" those contacts. *Ford Motor Co.*, 141 S.Ct. at 1025. "The mere fact that [the defendant's out-of-state] conduct affected plaintiffs with connections to the forum [s]tate does not suffice to authorize jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (holding that Nevada court could not exercise specific jurisdiction over out-of-state defendant for conduct that occurred in Georgia "even though the plaintiffs were Nevada residents and 'suffered foreseeable harm in Nevada.'"); *see also Bristol Meyers Squibb*, 137 S.Ct. at 1782 (holding that California court could not exercise specific jurisdiction over out-of-state defendant because all conduct giving rise to plaintiffs' claims occurred outside California.)

LDI's claims are based on a series of Matheson loads that originated outside New York and that were delivered to a location outside New York. Moreover, Rood coordinated those shipments from Georgia, and Rood failed to pay LDI from that same location. Indeed, the only connection between this case and New York is that the plaintiff is located here, and that is simply not enough. Therefore, LDI's claims do not arise out of Rood's New York activities, and this Court cannot exercise specific jurisdiction over Rood.

**CONCLUSION**

This Court does not have jurisdiction over Rood under New York law. And even if it did, exercising jurisdiction over Rood here would offend due process. Therefore, this Court lacks personal jurisdiction over Rood, and Rood's motion to dismiss the complaint for lack of personal jurisdiction, Docket Item 8, is granted. The Clerk of Court shall close this case.

    SO ORDERED.

    Dated:    December 21, 2022
                  Buffalo, New York

                                      *s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE